

July 2, 2018

Ms. Cheryl Milejczak
6610 Little Pond Trail
Cumming, GA 30028

**Re: Confidentiality and Intellectual Property Agreement**

Dear Cheryl,

As a condition of your employment with One Door, Inc., (the "Company"), you must sign and return this letter agreement (the "Agreement"). This Agreement confirms your promise to protect and preserve information and property that is confidential and proprietary to the Company, its subsidiaries and affiliates, as well as other terms and conditions of your involvement.

**1.   Your Duties Regarding Confidentiality.**

The Company has developed, uses and maintains "trade secrets" and other confidential and proprietary information including, without limitation, technical data and specifications, business and financial information, product and marketing plans, customer and client information, customer and client lists, customer, client and vendor identities and characteristics, agreements, marketing knowledge and information, sales figures, pricing information, marketing plans, business plans, strategy forecasts, financial information, budgets, software, projections and procedures, and Inventions (as defined in Section 3), in written, oral, electronic and/or other forms ("Confidential Information"), and the Company has taken and shall continue to take all reasonable measures to protect the confidentiality of such Confidential Information. You acknowledge that during your employment with the Company you will be given direct access to and knowledge of Confidential Information.

The term "trade secrets," as used in this Agreement, shall be given its broadest possible interpretation under Massachusetts law and shall include, but not be limited to, anything tangible or intangible or electronically kept or stored, which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production or management information, design, process, procedure, formula, invention or improvement; and other confidential and proprietary information  and documents.

You agree that all such Confidential Information is and shall remain the sole property of the Company and that you will hold in strictest confidence, and will not, either during or after the termination of your involvement (except as required in the course of your efforts on behalf of the Company), use, disclose or give to others (whether a business, firm, entity, person or otherwise), either directly or indirectly, any of the Confidential Information or any other scientific, technical, trade or business secret or confidential or proprietary information of the Company or of any third party provided to you during your association with the Company.

Your obligation of confidentiality under this Agreement does not apply to information that (a) becomes a matter of public knowledge through no fault of your own or (b) must be disclosed pursuant to lawful subpoena, court order or statutory requirement.

One Door, Inc.  |  268 Summer Street Suite 800  |  Boston, MA 02210  |  800.532.2468

However, you agree that in the event you are questioned by anyone not employed by the Company, or by an employee of or a consultant to the Company not authorized to receive such information, in regard to any such Confidential Information or any other secret or confidential work of the Company, you will promptly notify E.Y. Snowden, Chief Executive Officer, One Door, Inc., 268 Summer Street, Suite 800, Boston, MA 02210, 617-576-1234. You further agree that you will return all Confidential Information, including all copies and versions of such Confidential Information (including but not limited to information maintained on paper, disk, CD-ROM, network server, or any other retention device whatsoever) and other property of the Company, to the Company immediately upon termination.

The terms of this Section 1 of this Agreement are in addition to, and not in lieu of, any other contractual, statutory or common law obligations that you may have relating to the protection of the Company's Confidential Information or its property. The terms of this section shall survive indefinitely your involvement with the Company.

## 2. Ownership of Ideas, Copyrights and Patents.

a.  Property of the Company.  You agree that all ideas, discoveries, creations, manuscripts and properties, innovations, improvements, know-how, inventions, designs, developments, apparatus, techniques, methods, writings, specifications, sound recordings, pictorial and graphical representations and formulae (collectively, "Inventions") which may be used by or which relate to the business or activities of the Company, whether patentable, copyrightable or not, which you may conceive, reduce to practice or develop during your engagement (or, if based on or related to any Confidential Information, made by you within two (2) years after the termination of such engagement), whether or not during normal working hours and whether or not on the Company's premises or with the use of its equipment, whether alone or in conjunction with others, and whether or not at the request or suggestion of the Company or otherwise, shall be "works made for hire," and shall be the sole and exclusive property of the Company, and that you shall not publish any such Inventions without the prior written consent of the Company.  You hereby assign to the Company all of your right, title and interest in and to such Inventions.  You further represent and agree that to the best of your knowledge and belief none of the Inventions will violate or infringe upon any right, patent, copyright, trademark or right of privacy, or constitute libel or slander against or violate any other rights of any person, firm or corporation, and that you will use your best efforts to prevent any such violation.

b.  Your Duty to Cooperate.  During your engagement with the Company and afterwards, you agree that you will fully cooperate with the Company, its attorneys and agents in the preparation and filing of all papers and other documents as may be required to perfect the Company's rights in and to any such Inventions, including, but not limited to, joining in any proceeding to obtain letters patent, copyrights, trademarks or other legal rights of the United States and of any and all other countries on such Inventions, provided that the Company will bear the expense of such proceedings, and that any patent or other legal right so issued to you, personally, shall be assigned by you to the Company without charge by you.

c.  Licensing and Use of Data You Provide to the Company.  With respect to any Inventions, and work of any similar nature (from any source), whenever created, which you have not prepared or originated in the performance of your association, but which you provide to the Company or incorporate in any Company product or system, you grant

to the Company a royalty-free, fully paid-up, non-exclusive, perpetual and irrevocable license throughout the world to use, modify, create derivative works from, disclose, publish, translate, reproduce, deliver, perform, dispose of, and to authorize others so to do, all such Inventions. You promise that you will not include in any Inventions you deliver to the Company or use on its behalf, without the prior written approval of the Company, any material which is or will be patented, copyrighted or trademarked by you or others unless you provide the Company with the written permission of the holder of any patent, copyright or trademark owner for the Company to use such material in a manner consistent with then-current Company policy.

## 3. Your Representations Regarding Prior Work and Legal Obligations.

a.   No Other Agreement Prohibits You from Working with the Company. By signing this Agreement, you represent that you have no agreement with or other legal obligation to any prior employer or any other person or entity that restricts your ability to engage in employment discussions, to accept employment with, or to perform any function for the Company. You acknowledge that the Company is basing important business decisions on these representations and affirm that your representations made in this section of this Agreement are true.

b.   You Will Not Provide Us Confidential Information from Other Employers. You also acknowledge that the Company has advised you that at no time, either during any pre-engagement discussions or at any time thereafter, should you divulge to or use for the benefit of the Company any trade secret or confidential or proprietary information of any previous employer. By signing this Agreement, you affirm that you have not divulged or used any such information for the benefit of the Company, and that you have not and will not misappropriate any Invention that you played any part in creating while working for any former employer.

## 4. Solicitation Activities.

During the term of your employment with the Company, and for a period of one (1) year thereafter, regardless of the circumstances of termination, you (i) will not, directly or indirectly, solicit, contact, provide or offer to provide services to any Company client or customer or parties with whom the Company has on-going or pending business relationships with; and (ii) will refrain from soliciting or encouraging any employee, consultant, client, customer or supplier to terminate or otherwise modify adversely its business relationship with the Company, except as otherwise consented to in writing by the Company. You acknowledge and understand that the restrictions set forth in this Section 4 are intended to protect the Company's interest in its Confidential Information and established customer relationships and goodwill and agree that such restrictions are reasonable and appropriate for this purpose.

## 5. Provisions Necessary and Reasonable / Necessity of Equitable Relief.

You specifically agree that the provisions of Sections 1-4 of this Agreement are necessary and reasonable to protect the Company's Confidential Information, property rights and business interests. In particular, you acknowledge that you understand the restrictions on your engagement in Section 2 of this Agreement, and that given your skills and work experience, such restrictions will not prevent you from earning a living in your general field of occupation during the term of such restrictions. You further agree that a breach or threatened breach by you of Sections 1-4 of this Agreement would pose the risk of

irreparable harm to the Company, and that in the event of a breach or threatened breach of any of such covenants, in addition to such other remedies as the Company may have at law, without posting any bond or security, the Company shall be entitled to seek and obtain equitable relief, in the form of specific performance, or temporary, preliminary or permanent injunctive relief, or any other equitable remedy which then may be available. The seeking of such injunction or order shall not affect the Company's right to seek and obtain damages or other equitable relief on account of any such actual or threatened breach.

### 6. Choice of Law; Enforceability; Waiver of Jury Trial.

a. The Law of Massachusetts Applies to this Agreement. This Agreement shall be deemed to have been made in the Commonwealth of Massachusetts, shall take effect as an instrument under seal within Massachusetts, and the validity, interpretation and performance of this Agreement shall be governed by, and construed in accordance with, the internal law of Massachusetts, without giving effect to conflict of law principles, and specifically excluding any conflict or choice of law rule or principle that might otherwise refer construction or interpretation of this Agreement to the substantive law of another jurisdiction. We both acknowledge that the last act necessary to render this Agreement enforceable is its execution by the Company in Massachusetts, and that the Agreement shall be maintained in Massachusetts.

b. Any Dispute Regarding This Agreement Will Take Place in Massachusetts. Both of us agree that any action, demand, claim or counterclaim relating to, or arising under, the terms and provisions of this Agreement, or to its breach, shall be commenced in Massachusetts in a court of competent jurisdiction. We both further acknowledge that venue shall exclusively lie in Massachusetts and that material witnesses and documents would be located in Massachusetts.

c. We Both Waive the Right to a Jury Trial. Finally, we both agree that any action, demand, claim or counterclaim related to, or arising under, this Agreement shall be resolved by a judge alone, and we both waive and forever renounce the right to a trial before a civil jury.

### 7. General.

a. Agreement Enforceable if You Are Transferred. You acknowledge and agree that if you should transfer between or among any affiliates of the Company, wherever situated, or be promoted or reassigned to functions other than your present functions, all terms of this Agreement shall continue to apply with full force.

b. This Is the Entire Agreement Between Us. This Agreement embodies the entire agreement and understanding between us with respect to its subject matter and supersedes all prior and contemporaneous oral and written agreements and understandings relating to its subject matter. No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Agreement.

c. Modification and Amendment; Waiver; Assignment and Benefit. The terms and provisions of this Agreement may be modified or amended only by written agreement executed by both parties. The terms and provisions of this Agreement may be waived, or

Case 1:26-cv-13467-LTS Document 1-2 Filed 07/30/26 Page 5 of 5

consent for the departure from its terms granted, only by a written document executed by the party entitled to the benefits of such terms or provisions. No such waiver or consent shall be deemed to be or shall constitute a waiver or consent with respect to any other terms or provisions of this Agreement, whether or not similar. Each such waiver or consent shall be effective only in the specific instance and for the purpose for which it was given and shall not constitute a continuing waiver or consent. The Company may assign its rights and obligations under this Agreement at its sole discretion. As this Agreement is personal to you, you may not assign your rights and obligations under this Agreement. All statements, representations, warranties, covenants and agreements in this Agreement shall be binding on the parties and shall inure to the benefit of any successors and/or permitted assigns of the parties.

d.  Severability. The parties intend this Agreement to be enforced as written. However, if any portion or provision of this Agreement shall to any extent be declared illegal or unenforceable by a duly authorized court having jurisdiction, we both desire that such portion or provision be modified by such a court so as to make it enforceable, and that the remainder of this Agreement be enforced to the fullest extent permitted by law.

e.  Meanings of Headings. The headings in this Agreement are for convenience only, and we both agree that they shall not be construed or interpreted to modify or affect the construction or interpretation of any provision of this Agreement.

## YOUR ACKNOWLEDGMENT

By signing this Agreement, you are acknowledging that you have had adequate opportunity to review this Agreement, to reflect upon and consider the terms and conditions of this Agreement and how they may affect you, that you fully understand this Agreement's terms, and that you are agreeing voluntarily to its terms. If this document accurately reflects our agreement, please so indicate by signing and returning to us the enclosed copy of this letter.

Sincerely,

E.Y. Snowden
Chief Executive Officer
One Door, Inc.

Accepted and Agreed:

Cheryl Milejczak                                    7/3/18
                                                    Date